**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROMAR M. MONTGOMERY,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:19-cv-129** |
| | : | |
| **v.** | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| | : | |
| **JAMES WHITMAN,** | : | **Magistrate Judge Vascura** |
| | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on Defendant James Whitman's Motion for Summary

Judgment. (ECF No. 25). For the following reasons, Defendant's Motion is **DENIED.**

### I.        FACTUAL BACKGROUND

Plaintiff Romar M. Montgomery brings this Eighth Amendment excessive force suit

against Corrections Officer James Whitman related to events that occurred while Plaintiff was

incarcerated at Southern Ohio Correctional Facility in Lucasville, Ohio. (ECF No. 3).

Montgomery alleges Whitman, along with approximately ten other Corrections Officers

("COs"), approached him and a group of inmates on March 3, 2018 and directed them to face the

wall. (ECF No. 3 at 5; Montgomery Dep. ECF No. 23-7 at 16:24-17:8). In a Conduct Report

written by Whitman after the incident, Whitman said that he was conducting a routine pat-down

for contraband. (ECF No. 3 Ex. A). Montgomery testified that the COs had been conducting

extra pat-downs because another CO had recently been stabbed. (Montgomery Dep. ECF No. 23-

7 at 12:11-21). He said all the inmates knew what had happened and he was purposefully careful

to be on his best behavior during that time. (*Id.* at 14:1-4).

1

Montgomery testified that he and a group of inmates were stopped on their way to the chow hall by ten COs who "told us to stop… take off your shoes, and put your hands on the wall, and spread your legs." (*Id.* at 16:24-17:8). He took off his shoes, put his left arm on the wall, and spread his legs. (*Id.* at 17:9-13). When Whitman instructed him to place his right arm on the wall, Montgomery testified he kept his left arm on the wall and turned his head to tell Whitman he was unable to place his right arm on the wall because it is deformed. (*Id.* at 34:21-35:15; 42:1-8). Montgomery was born with a deformed right arm, which is curved and shorter than his other harm. His ability to move his arm is severely limited. (*Id.* at 14:21-15:8). He submitted a photo demonstrating the visible deformity in his right arm. (ECF No. 3 at 8). After informing him of his inability to place his right arm on the wall, Montgomery says Whitman's grip got tighter and more painful, and Whitman attempted to force Montgomery's right arm on to the wall. (Montgomery Dep. ECF No. 23-7 at 34:21-35:9; 41:1-6). Montgomery then claims Whitman slammed him to the ground, put him in a chokehold, and began punching him in the face and eye, knocking out one of his contact lenses. (*Id.* at 35:11-18; ECF No 3 at 5). Whitman admitted he could tell something was wrong with Montgomery's arm before taking him to the ground. (Whitman Dep. ECF No. 23-10 at 9:17-21). He claims he took him to the ground by his shirt, not his arm. (*Id.* at 7:1-7).

Montgomery says after Whitman slammed him to the ground, he felt other COs begin beating him and hitting him in the sides and groin. (ECF No. 3 at 5; Montgomery Dep. ECF No. 23-7 at 35:18-36:8). Montgomery says Whitman kept him in a chokehold while he was on the ground. (*Id.* at 69:14-21). He says the assault only stopped when a "white shirt" came in and told the officers to get off of him. (*Id.* at 36:5-8). Whitman then pulled him up and took him to the strip cage. (*Id.* at 73:3-15). He didn't know any of the COs by name, but he asked for Whitman's

name when Whitman brought him to the hole and told him he was going to file a report. (*Id.* at 21:14-19). Montgomery was informed later by another inmate that some of the other COs had beaten him with a nightstick on his sides and groin. (*Id.* at 82:4-15). After the strip search, a nurse came in and Montgomery showed her two holes in his right arm where Whitman grabbed him, as well as injuries to his face, and asked her to take photos. (*Id.* 86:6-14). Two photos in the record show Montgomery's left eye, which appears red and swollen, and his right arm, which has two visible abrasions. (ECF No. 23-15). Montgomery reported pain in his arm, his eyes, sides, legs, and groin. (Montgomery Dep. ECF No. 23-7 at 88:3-6). He says he kept asking to sit down because his ankle was hurting and was told he could sit when he got to the hole. (*Id.* at 88:6-11).

Following the incident, Montgomery was placed in solitary confinement, or "the hole" for nineteen days. (ECF No. 28 at 5). Whitman filed a Conduct Report, claiming Montgomery said "get the fuck off me!" when he began the pat-down, to which he "reacted by placing the inmate on the floor." (ECF No. 3 Ex. A). He reported that Montgomery was resisting, and that other Corrections Officers assisted in "gain[ing] control" of him." (*Id.*). Montgomery testified that he never raised his voice or cursed at Whitman, never made any sudden movements, and never attempted to resist. (Montgomery Dep. ECF No. 23-7 at 43:21-45:2). Other COs present during the incident testified that they were only aware of the incident after Montgomery was taken to the ground and did not hear him yell at Whitman prior to being taken to the ground. CO Fri said he responded to the incident after hearing "squeaking of shoes" and saw Montgomery and Whitman on the ground. (Fri Dep. ECF No. 23-11 at 6:10-17). He did not recall hearing any yelling. (*Id.*). CO Pavick was likewise unaware of the reason Montgomery was taken to the ground and could not recall hearing him say anything before that. (Pavick Dep. ECF No. 23-8 at 5:6-19; 9:21-25). (*See also* Osbourne Dep. ECF No. 23-9 at 16:17-17:4; Cullum Dep. ECF

23-5 at 10:2-6). CO Bigham said he responded to a "boom" and saw Whitman and Montgomery on the ground. (Bigham Dep. ECF No. 23-2 at 15:11-20). He says he heard Montgomery say "get the hell off me" after he was on the ground with multiple COs restraining him. (*Id.* at 39:15-40:2).

Montgomery attempted to file a series of administrative complaints during his isolation. (ECF No. 23-21 at 1-2). He objected to his placement in solitary confinement and asked why was he was being punished. He was told his conduct would be reviewed by the Rules Infraction Board ("RIB"). Montgomery was held for nineteen days and never received a RIB hearing. (Greene Decl. ECF No. 23-25 at ¶ 9). Ultimately, the Warden released him from segregation and "disposed of" his grievance and the conduct report was withdrawn. (*Id.* at ¶¶ 9, 10).

## II.    PROCEDURAL BACKGROUND

Plaintiff Romar M. Montgomery filed a pro se Complaint on January 18, 2019 against Corrections Officer James Whitman, seeking compensatory and punitive damages resulting from the alleged attack by Officer Whitman during a routine pat-down. (ECF No. 3). On January 11, 2020 Defendant filed this Motion for Summary Judgment. (ECF No. 25). Plaintiff, by and through counsel, filed his Response in Opposition to the motion on February 4, 2020 and Defendant filed his Reply on February 18, 2020. (ECF Nos. 28, 30). Defendant's Motion for Summary Judgment is now ripe for review.

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences

4

must be drawn in the non-moving party's favor. *United States Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)).

A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Id.* (quoting *Anderson*, 477 U.S. at 250).

## IV.    LAW & ANALYSIS

### A.  Eighth Amendment Excessive Force Claim

A prisoner's claim that he was subjected to the excessive use of force is analyzed under the Eighth Amendment prohibition against cruel and unusual punishment. *Bortoli v. Fultz*, No. 2:03-CV-0811, 2006 WL 689063, at *2 (S.D. Ohio Mar. 16, 2006) (citing *Cornwell v. Dahlberg*, 963 F.2d 912 (6th Cir.1992)). The Court is required to assess whether force "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The "extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary,'" but the absence of serious injury is not fatal to a prisoner's excessive force claim. *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

There is both an objective and subjective component to Eighth Amendment claims. *Cordel v. McKinneyl*, 759 F.3d 573, 580 (6th Cir. 2014). The Court must ask both if "'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)). In evaluating the subjective component, courts consider "the need for application of force, the relationship between the need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id*. at 7 (quoting *Whitley*, 475 U.S. at 321)).  The "objective component…is contextual and responsive to 'contemporary standards of decency." *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "In the excessive force context… [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id.* at 9.

6

Defendant moved for summary judgment, arguing Whitman's use of force was applied to maintain discipline, not maliciously to cause harm, and was objectively reasonable under the circumstances. (ECF No. 25 at 16-22). Plaintiff maintains that Defendant has not met his burden of proving there are no disputed material facts, including whether Montgomery verbally informed Whitman that his arm was deformed, whether Whitman saw or had prior knowledge of Montgomery's deformed right arm, and whether Montgomery yelled at Whitman or otherwise provoked or resisted the use of force. (ECF No. 28 at 7). This Court finds Defendant has not met his burden for summary judgment on Plaintiff's excessive force claim with respect to either the subjective or objective components.

### 1. Subjective Component

With respect to the subjective factor, Montgomery has provided sufficient testimony to support his claim that Whitman's use of force was out of malice, and not a good faith attempt to restore discipline. Montgomery testified he informed Whitman of his disability, that it was visible to a reasonable person, that Whitman acknowledged he could tell something was wrong with Montgomery's arm. (*See* Montgomery Dep. ECF No. 23-7 at 34:21-35:15, 42:1-8; Whitman Dep. ECF No. 23-10 at 9:17-21).

Regarding the first factor, there is a genuine issue of material fact as to whether force was even necessary. Montgomery testified that he did not swear or yell at Montgomery and the other COs present could not confirm Montgomery physically or verbed resisted Whitman's orders before being taken to the ground. (Montgomery Dep. ECF No. 23-7 at 43:21-45:2; Fri Dep. ECF No. 23-11 at 6:10-17; Pavick Dep. ECF No. 23-8 at 5:6-19, 9:21-25; Osbourne Dep. ECF No. 23-9 at 16:17-17:4; Cullum Dep. ECF No. 23-5 at 10:2-6; Bigham Dep. ECF No. 23-2 at 15:11-20). Whitman testified he took Montgomery to the ground because "[h]e c[a]me off the wall

quickly." (Whitman Dep. ECF No. 23-10 at 5:3-4). Montgomery maintains he kept his left arm on the wall and turned his head to inform Whitman why he could not place his right arm on the wall. (Montgomery Dep. ECF No. 23-7 at 34:21-35:9). In his deposition, Whitman summarily denies Montgomery's allegations that he grabbed his right arm or punched him in the face. (Whitman Dep. ECF No. 23-10 at 11:2-14). Whitman claims that the video evidence shows the officers "merely sought to restrain the Plaintiff as quickly as possible." (ECF No. 25 at 19). No such conclusion is supported by the video, which is taken from the opposite end of the hallway. A group of prisoners can be seen lined up for a pat down, and at one point, a prisoner is thrown to the ground at which point the remaining COs rush over. (ECF No. 23-16). The video is entirely inconclusive with respect to whether Montgomery was complying with or resisting the pat-down, or otherwise provoking the COs before being thrown to the ground. *See Cordell v. McKinney*, 759 F.3d 573, 583-84 (6th Cir. 2014) (finding "videotape does not conclusively answer any questions" and the court is required to accept Plaintiff's testimony as true at this stage of the litigation). The Court finds a reasonable jury could accept Montgomery's testimony that he explained his inability to comply with the order to put his right arm on the wall, that Whitman was aware Montgomery's arm was deformed and unable to be placed on the wall, and that Montgomery did not yell at or resist Whitman to provoke the attack.

The second and third factors look at the relationship between the need and amount of force used and whether the threat was reasonably perceived. Even if Defendant could show Montgomery swore at him or was not complying with his order to face the wall, he has failed to show that he perceived Montgomery to be a physical threat or that the amount of force applied was reasonable or proportionate under the circumstances. The Eighth Amendment prohibits "the wanton and unnecessary infliction of pain" and the imposition of conditions "grossly

disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).
Even if Whitman did reasonably perceive Montgomery as not complying with his order to stay
on the wall, Montgomery testified that "if you mess up in that situation, they're going to tell you
what to do. They're going to tell you, hey, keep your hand on the wall, or don't move, or don't
turn around, but that's about it." (Montgomery Dep. ECF No. 23-7 at 33:9-13). This Court finds
a reasonable jury could conclude that Whitman did not reasonably perceive Montgomery to be a
threat for failing to place his deformed arm against the wall or even swearing at him (which
Montgomery denies), and that slamming him to the ground, placing him in a chokehold, and
punching him in the face was an excessive use of force.

Finally, there is no evidence to support Whitman's claim that he "clearly attempted to
temper the situation." (ECF No. 25 at 21). He claims his verbal request for Montgomery to put
his arm on the wall was his attempt to temper the situation before using force. (*Id.*). But the
proper inquiry is whether Whitman made any effort to temper the *severity* of the force used.
*Hudson*, 503 U.S. at 7. Whitman has not demonstrated that made any efforts to temper the
severity of his use of force proportionate to the situation at hand. Even if Montgomery failed to
comply with the order to face the wall, Defendant has not demonstrated his use of force was
proportionate or even necessary to control Montgomery. *See Cordell*, 759 F.3d at 583-84
(finding there was "no evidence" that the officer "made any effort to moderate the forced he
used" other than his "bare assertion that he used the minimum amount of force necessary to
control [Plaintiff]").

Thus, the Court finds Whitman has not met his burden of proving there are no disputed
material facts with respect to the subjective component of the Eighth Amendment analysis.

## 2. Objective Component

With respect to the objective component, the Court holds Montgomery has put forward sufficient evidence to demonstrate Whitman acted unreasonably and violated contemporary standards of decency when he tackled Montgomery and hit him in the face. In his Motion, Whitman focuses on the lack of serious injury Montgomery sustained in the altercation. (ECF No. 25 at 21-22). He argues "Plaintiff suffered two minor abrasions and no other physical injury" and concludes his injuries were merely *de minimis* and thus do not rise to a constitutional violation. (*Id.*).

The Supreme Court has made clear that the *de minimis* inquiry is "based on the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010). The Court in *Wilkins* reaffirmed its holding in *Hudson* that "significant injury" is not a threshold requirement for an excessive force claim and the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7). The exclusion of *de minimis* uses of force from constitutional protection contemplated by the Court may be a "push or shove that causes no discernable injury." *Id.* at 38 (internal citations omitted).

This Court finds the record contains supporting evidence that Whitman applied more than a *de minimis* use of force. Montgomery alleges, and Whitman does not dispute, that Whitman tackled Montgomery to the ground and, along with other Corrections Officers, hit him repeatedly in his face and body. Whitman further maintains that he "never allegedly struck Plaintiff anywhere except the face," and that any strikes to Plaintiff's body were administered by other officers. (ECF No. 30 at 5). Even if Whitman could demonstrate he indisputably only struck Plaintiff in the face and not his body, this does not render the use of force *de minimis*.

10

Montgomery's testimony claims much more than a "push or shove." *Wilkins*, 559 at 38. Rather, he claims Whitman pulled him by his deformed right arm, leaving marks, and slammed him to the ground. (ECF No. 3 at 5; Montgomery Dep. ECF No. 23-7 at 35:11-18). He says Whitman beat him repeatedly and hit him in the face so hard that his contact was knocked out. (*Id.*). The record reflects Montgomery received a medical examination in which he reported pain in his groin, pain on the left side of his face, and abrasions on his right arm. (ECF No. 23-17 at 38). Courts have recognized similar uses of force can rise to the level of Eighth Amendment violations, even when resulting injuries may not be severe. *See, e.g., Hudson*, 503 U.S. at 4 (Hudson testified McMillian punched him "in the mouth, eyes, chest, and stomach" and he suffered "minor bruises and swelling of his face, mouth, and lip" and cracked his dental plate); *Wilkins*, 559 U.S. at 38 ("Wilkins alleged that he was punched, kicked, kneed, choked, and body slammed 'maliciously and sadistically' and '[w]ithout any provocation'"); *Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir. 2011) (plaintiff alleged injuries of "coughing and shortage of oxygen" in response to officer's use of a chemical agent to disable him); *Bortoli*, 2006 WL 689063, at *2 (plaintiff alleged officer "yelled at him, poked him in the face and forehead, threatened to injure him, grabbed him by the neck, choked him, and shook his head").

The fact that a prisoner had "the good fortune to escape without serious injury" does not render use of force *de minimis*. *Wilkins*, 559 U.S. at 38. Focusing on the nature of the force applied, as the Supreme Court's jurisprudence requires, this Court finds Montgomery has put forth sufficient evidence such that a reasonable jury could conclude Whitman was "gratuitously beaten" out of malice, rather than good faith, such that the use of force offends contemporary standards of decency. *Id.*; *see also Hudson*, 503 U.S. at 8. Therefore, Whitman is not entitled to summary judgment on Plaintiff's excessive force claim.

11

## B. Damages

Plaintiff seeks $100,000 in compensatory damages for "pain and suffering" and $100,000 in punitive damages for "evil motive and intent" from the incident with Whitman. (ECF No. 3 at 7). Defendant moved for summary judgment on both claims, arguing Montgomery does not meet the standard for compensatory damages under the Prison Litigation Reform Act ("PLRA") and the Eighth Amendment. (ECF No. 25 at 27-28). Defendant further argues that Plaintiff's punitive damages claim does not meet the Section 1983 standard because he has not demonstrated Whitman acted with malicious intent or callous indifference. (*Id.* at 29).

### 1. Compensatory Damages

42 U.S.C. § 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." This statute applies to Eighth Amendment claims for emotional or mental damages. *See, e.g., Jarriett v. Wilson*, 162 Fed. Appx. 394, 400 (6th Cir. 2005).

The PLRA does not include a statutory definition of "physical injury." 42 U.S.C. § 1997e(e). Courts have found the requisite injury "must be more than de minimis" but "need not be significant." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 626-27 (6th Cir. 2011). Whitman argues "Plaintiff suffered only two minor abrasions and never sought follow-up medical care" and this is *de minimis.* (ECF No. 25 at 28). Plaintiff responds that his injuries are more than *de minimis* under *Hudson* and its progeny. Taking his testimony as true, Whitman grabbed him by his disabled arm, threw him to the ground, put him in a chokehold, and repeatedly hit him in the face, knocking out his contact lens. (*See* ECF No. 28 at 19; Montgomery Dep. ECF No. 23-7 at 35:11-18). He says he experienced pain in his arm, his eyes,

sides, legs, and groin for several weeks after the incident. (Montgomery Dep. ECF No. 23-7 at 88:3-6; 90:12-16). As this Court explained above, Montgomery as alleged injuries "are similar in kind and degree to other injuries that have been found to violate a prisoner's Eighth Amendment rights." *Id.* 627. *See also Hudson*, 503 U.S. at 4; *Wilkins*, 559 U.S. at 38. Thus, he has likewise met the standard to survive summary judgment on his claim for compensatory damages.

### 2. Punitive Damages

The Supreme Court has held, "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The Court made clear this standard applies "even when the underlying standard of liability for compensatory damages is one of recklessness," noting "[t]here has never been any general common-law rule that the threshold for punitive damages must always be higher than that for compensatory liability." *Id.* at 53, 56. *See also King v. Zamiara*, 788 F.3d 207, 217 (6th Cir. 2015) ("punitive damages are also appropriate when a defendant's action involves even reckless disregard of the plaintiff's rights").

Defendant cannot establish that Whitman acted without malicious intent or reckless disregard for Montgomery's rights. The Eighth Amendment standard requires a showing that Defendant acted with the purpose of inflicting harm. *See Hudson*, 503 U.S. at 7. As this Court explained above, Plaintiff has at least demonstrated a triable issue of fact regarding Whitman's motive. It is thus up to the factfinder to consider whether to exercise their discretion in granting punitive damages. *Zamiara*, 788 F.3d at 217-18.

### C. Immunity

### 1. Eleventh Amendment Sovereign Immunity

Defendant argues that, to the extent Plaintiff's claims against him for monetary damages can be construed as a suit against him in his official capacity, it is barred by the Eleventh Amendment. (ECF No. 25 at 25). *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (the Eleventh Amendment bars suits against the state and a suit against a state official in his official capacity for money damages is considered a suit against the state itself). The Eleventh Amendment bars federal lawsuits for money damages against the state, unless the state has waived sovereign immunity. *See, e.g., Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992) ("a suit for damages against a state official in his or her official capacity cannot be maintained pursuant to § 1983"). Plaintiff does not contest that Defendant would be immune from suit in his official capacity under the Eleventh Amendment, but maintains that Defendant was sued in his individual capacity and had sufficient notice of such. (ECF No. 28 at 20).

The Sixth Circuit has applied a "course of proceedings" test to determine whether a Defendant was on notice that they were being sued in their individual capacity; failure to state explicitly whether a defendant is sued in their individual capacity "is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001). The Court may look to subsequent motions by Plaintiff as well as later pleadings, such as response motions, to determine whether proper notice has been given. *Id.* at 772-774 ("[e]ven assuming the complaint itself failed to provide sufficient notice, Moore's response to the officers' motion to dismiss clarified any remaining ambiguity"); *See also Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (holding Plaintiff's response to Defendant's summary judgment motion gave sufficient notice that Defendant was sued in his individual capacity).

14

Applying the course of proceedings test, this Court finds Plaintiff has given sufficient notice that Defendant is being sued in his individual capacity. Plaintiff admits that he did not make explicit in his Complaint that he was suing Whitman in his individual capacity, but as this Circuit has made clear, this is not fatal to his Complaint. (ECF No. 28 at 19-22); *Moore*, 272 F.3d at 772. The Court looks to the elements of Plaintiff's Complaint and subsequent filings for context regarding the capacity in which Defendant was sued. Here, Mr. Montgomery filed suit against Whitman for an assault. (ECF No. 3). The nature of his claims suggest that Whitman acted outside the course of his official duties. He also seeks monetary damages which, though not dispositive, is highly indicative that the suit is against Whitman in his individual capacity. *See Moore*, 272 F.3d at 773 (citing *Shoshone–Bannock Tribes v. Fish & Game Comm'n of Idaho*, 42 F.3d 1278, 1284 (9th Cir.1994) (presuming individual liability when complaint seeks money damages from state officials)); *See also Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002) ("the request for monetary damages is one factor that might place an individual on notice that he is being sued in his individual capacity").

Defendant takes issue with this Circuit's holdings in *Moore* and *Abdur* and goes to great lengths to warn of their expansion, relying heavily on the dissenting opinion in *Moore*. (ECF No. 30 at 16-17). This Court is unpersuaded by Defendant's argument that this test does not provide substantial justice for defendants and allows plaintiffs to belatedly salvage deficient pleadings. (*Id.*). The "course of proceedings" test looks at the totality of plaintiff's claims as well as subsequent filings, recognizing it would be unjust to hold plaintiffs, especially inmates proceeding without counsel, to a requirement that they recite the phrase "individual capacity" verbatim in their initial complaint. In this case, the indicators in Plaintiff's original Complaint— including the nature of his excessive force claim and his request for money damages—as well as

15

his explicit clarification in his Response motion, together are sufficient to give Defendant notice that he is being sued in his individual capacity pursuant to the "course of proceedings" test.

### 2. Qualified Immunity

Whitman argues that, to the extent he has been sued in his individual capacity, he is entitled to summary judgment on qualified immunity. (ECF No. 25 at 27). Qualified immunity "protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757 (2014). An official may "be held personally liable for civil damages for unlawful official action if that action was not objectively reasonable in light of the legal rules that were 'clearly established' at the time it was taken." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). In demonstrating that a right was clearly established, courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 731 (2011)).

Whitman argues that he is entitled to qualified immunity because he was acting within his discretionary authority and he did not act objectively unreasonably in light of a clearly established constitutional right. (ECF No. 25 at 27). He argues that the evidence demonstrates Montgomery resisted his orders to face the wall and "put his arm out." (*Id.*). Thus, he maintains his decision to take Montgomery to the ground in order to gain control of him was not objectively unreasonable. (*Id.*). As explained above, Montgomery disputes Whitman's versions of events as well as the reasonableness of his response. He responds that Whitman "is asking the

16

Court to ignore all conflicting testimony and conclude his actions were reasonable." (ECF No. 28 at 18).

The Court finds the constitutional prohibition on excessive force was clearly established, and that Plaintiff has alleged sufficient facts to support his version of events to survive summary judgment. The Supreme Court has made clear that the "core judicial inquiry" under the Eighth Amendment for excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7). In *Wilkins*, the Supreme Court reversed the lower court's dismissal of a prisoner's complaint, noting that Wilkins alleged "he was punched, kicked, kneed, choked, and body slammed 'maliciously and sadistically' and '[w]ithout any provocation.'" *Id.* at 38. Montgomery likewise alleges Whitman slammed him to the ground, injured his disabled arm, and punched him repeatedly, leading other COs piled on and continue hitting him and beating him with a nightstick. (ECF No. 3 at 5).

The summary judgment standard requires viewing the facts in the light most favorable to the non-moving party. *See Sierra Brokerage Servs.*, 712 F.3d at 327. "[S]ummary judgment would not be appropriate if there is a factual dispute (i.e., a genuine issue of material fact) involving an issue on which the question of immunity turns." *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988). When "the question of qualified immunity turns on disputed facts…'the jury, not the judge, must determine liability.'" *Green v. Throckmorton*, 681 F.3d 853, 866 (6th Cir. 2012) (quoting *McKenna v. Edgell*, 617 F.3d 432, 437-38 (6th Cir. 2010)).

The Court finds Plaintiff has, at the very least, established a genuine issue of material fact as to the reasonableness of Whitman's use of force and whether the force was applied maliciously, rather than a good faith effort to restore discipline. Montgomery maintains that he

complied with Whitman's order to put his arms on the wall to the best of his ability, that Whitman was aware his arm was deformed and could not be placed on the wall, and that he did not yell or curse at him or otherwise resist the pat-down. There are facts in the record to support Montgomery's contention that Whitman applied force out of malice rather than with good faith to restore discipline. Whitman testified he was aware something was wrong with Montgomery's arm before taking him to the ground. (Whitman Dep. ECF No. 23-10 at 9:17-21). He said the reason he took Montgomery to the ground was because he came off the wall quickly. (*Id.* at 5:4). A reasonable jury could conclude Whitman reacted out of malice and anger toward Montgomery's perceived noncompliance with his direction to get on the wall, not because force was actually needed to control him.

The Court concludes Plaintiff has put forward sufficient evidence such that a reasonable jury could accept his version of events and conclude Defendant's actions were unreasonable and in violation of Plaintiff's clearly established constitutional rights to be free from excessive force.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED.**

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  September 3, 2020**